# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

RAY A. DELOACH,

                                    Plaintiff,

        vs.

SAN DIEGO GAS & ELECTRIC
COMPANY, a California Corporation;
SAN DIEGO GAS & ELECTRIC
COMPANY PENSION PLAN; SEMPRA
ENERGY,

                                    Defendants.

CASE NO. 07CV1046-LAB (CAB)

**ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

[Dkt Nos. 16, 17]

        This matter is before the court on the parties' cross-motions for summary judgment in this action seeking disability benefits from an employer's plan covered by the Employee Retirement Income Security Act of 1974 ("ERISA").   Defendants San Diego Gas & Electric Company ("SDG&E"), San Diego Gas & Electric Company Pension Plan, and Sempra Energy ("Sempra") (collectively "Defendants") filed a Motion For Summary Judgment ("Motion").  Dkt No. 17.  Plaintiff Ray A. DeLoach ("DeLoach" or "Plaintiff") filed a Cross-Motion For Summary Judgment ("Cross-Motion").  Dkt No. 16.  Each side filed an Opposition to the other's motion, and each filed a Reply to the other's Opposition.  Pursuant to Civil Local Rule 7.1 (d)(1), the court finds the issues presented appropriate for decision on the papers and without oral argument.  For the reasons discussed below, Defendants' Motion is **GRANTED**, and Plaintiff's Cross-Motion is **DENIED**.

## I.     BACKGROUND

DeLoach was an employee performing the duties of a heavy equipment operator for SDG&E until 1998, at which time he became, and allegedly remains, continuously disabled. Compl. ¶¶ 6-7.  He was at that time a participant in the San Diego Gas & Electric Company Pension Plan ("Plan"), an employee welfare benefit plan as defined by 29 U.S.C. § 1002(1), offering, among other things, total disability income ("TDI") benefits.  Compl. ¶¶ 7-8.  He attached  as Exhibit A to the Complaint, incorporated therein by reference, "a three page summary of the PLAN" he represented was the only plan document he had received despite repeated requests for "a copy of the PLAN documents that set forth all of his rights and obligations under the PLAN." Compl. ¶ 8.  DeLoach alleges he experienced chronic neck and back pain, bilateral knee problems, and the side effects of pain medication persisting for several years.  He applied for Plan TDI benefits when he became eligible in the fall of 2000 after exhausting his sick leave accumulated over his 23 years of SDG&E employment. Defendants approved the claim, but paid him no benefits because he was receiving Workers' Compensation Disability benefits at the time, which were scheduled to terminate in June 2006.  Compl. ¶ 12.

The parties' Joint Statement of Undisputed Facts establishes DeLoach was born June 29, 1957, is a high school graduate, and was an employee of SDG&E from 1976 until 1998.  During his employment period, he participated in the Plan.  The Plan's TDI benefit for qualifying participants defines "Total Disability" as a participant's illness or injury that: "Prevents him from performing the duties assigned and required of him for the Employer's job classification or job description as of the date of illness or injury; or after 24 months of continuous disability, prevents him from engaging in any substantially gainful occupation for wages or profit for which he is reasonably qualified by education, training, or experience." Undisputed Fact No. 6.  The Plan provides the amount of TDI benefits shall be the equal of the greater of:  "(a) The participant's primary benefit under the Federal Social Security Act, or (b) Any early retirement benefit payable under the Plan at the time the Total Disability commences." Undisputed Fact No. 7.  The Plan further provides: "The TDI benefit amount

1   is reduced by the amount of any other income from Employer sick leave, Workers'
2   Compensation, occupational disease laws, or pursuant to the disability income provisions
3   of any state laws." Undisputed Fact No. 8.

4   The parties agree DeLoach sustained an injury on the job in October 1997.  In
5   October 2000, he submitted a claim for TDI benefits.  The Plan administrators approved the
6   claim under the "own occupation" definition of disability, and referred the file to an outside
7   vendor to estimate the amount of his TDI benefit.  Undisputed Fact Nos. 9-11.  The vendor
8   reported his estimated TDI benefit was $592.50 per month, an amount less than the
9   Workers' Compensation benefits DeLoach was then receiving through that program of
10  $680.00 per month as Permanent Partial Disability Benefits.  Undisputed Fact Nos. 12; *see*
11  Def. Mot. P&A 5:14-16 & Exh. E, p. E661. DeLoach's "workers' compensation benefits
12  exceeded his estimated TDI benefits and the Plan's offset provisions prevented him from
13  collecting TDI."  Def. Mot. P&A 5:16-19 ("Because the TDI was less than Plaintiff's worker's
14  compensation benefits, the Plan monitored the claim in coordination with the worker's
15  compensation claim").

16  In April 2005, DeLoach received an award of Social Security disability benefits
17  retroactive to April 2003.  Undisputed Fact No. 13.  Defendants notified him the Social
18  Security award might change the status of his TDI benefits.  The Plan had arranged for Dr.
19  Kane to perform an independent medical examination to determine DeLoach's eligibility for
20  further benefits, an examination he performed in February 2006, followed by a report of his
21  findings to the Plan.  Undisputed Fact Nos. 14-16.  Dr. Kane concluded DeLoach was not
22  disabled from all occupations.  By letter dated April 6, 2006, the Plan informed DeLoach of
23  its determination he was not entitled to TDI benefits.  He appealed that determination by
24  letter dated May 9, 2006 and thereafter submitted additional documentation and medical
25  records, including a Functional Capacity Evaluation ("FCE") performed by Barbara
26  Tourtellott, an occupational therapist.  Undisputed Fact Nos. 17-18.

27  In December 2006, the Plan's Benefits Committee ("Committee") met to consider
28  DeLoach's appeal. The Committee decided to await the results of a December 11, 2006

1   Agreed Medical Examination by Dr. Harvey Wieseltier before making a final determination.

2   In February 2007, the Committee reviewed Dr. Wieseltier's report and conclusion that

3   DeLoach was able to perform the duties of a computer repair technician, an occupation

4   SDG&E had paid to train DeLoach to perform in the aftermath of his disability.  By letter

5   dated March 8, 2007, the Plan informed DeLoach that the benefits denial was upheld on

6   appeal.   DeLoach asked the Committee to reassess its decision in a letter dated

7   April 10, 2007.  Undisputed Fact Nos. 19-22.

8          DeLoach received  Long-Term Disability ("LTD") benefits from the Plan for two years

9   associated with the 1997 work injury to his knees and back under the "own occupation"

10  definition of LTD.  Def. Mot. P&A 1:6-9.  It is Defendants' position DeLoach was not eligible

11  for continued benefits thereafter because he was not disabled from "any occupation" as

12  required under Plan TDI definitions.  Def. Mot. P&A 1:10-13.  They contend the Plan

13  correctly found DeLoach was eligible for no disability benefits after two years -- neither LTD

14  nor TDI -- because he did not meet the requirement he be "unable to perform the duties of

15  any gainful occupation for which he was reasonably suited by education, training, or

16  experience," as confirmed by two independent physicians, because he "was re-trained (at

17  Defendants' expense) as a computer repair technician," and the two physicians confirmed

18  his "ability to perform that occupation."  Def. Mot. P&A 1:15-19

19         DeLoach's Complaint asserts a single cause of action for payment of benefits

20  pursuant to 29 U.S.C. § 1132. That statutory provision, in pertinent part, authorizes civil

21  actions brought by an ERISA plan participant to recover benefits due, to enforce rights

22  conferred, or to clarify rights to future benefits under the terms of the participant's plan.

23  29 U.S.C. § 1132(a)(1)(A),(B).  DeLoach alleges he "is entitled under the PLAN to disability

24  benefits, contributions and credits to his pension fund, continued health, dental, vision

25  benefits, continued life insurance and other benefits pursuant to the terms of the PLAN," as

26  well as reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1).

27  Compl. ¶ 15.  He seeks the value of his denied benefits and a declaration he is entitled to

28  ongoing Plan benefits.  Compl. 3:27-28.

Defendants seek summary judgment in their favor on grounds DeLoach is not entitled to any of the benefits he seeks in this action, the Plan administrator's decision to deny his claim was reasonable under the applicable abuse of discretion standard of review, and defendants SDG&E and Sempra Energy are not proper parties.  They move for summary adjudication of five issues, with judgment in their favor disposing of the entire action:  (1) the standard of judicial review in this action is abuse of discretion; (2) the scope of the court's review is limited to the Administrative Record; (3) Defendants' decision denying DeLoach's claim for ERISA benefits was not arbitrary, capricious, or unreasonable; (4) a determination SDG&E is not a proper party to this action; and (5) a determination Sempra is not a proper party to this action.  Dkt No 17.

DeLoach seeks summary judgment awarding him past and future benefits, asserting entitlement to judgment because the termination of benefits in April 2006 and the denial of his administrative appeal in March 2007 were improper.  Dkt No. 16, 1:5-7.  He contends: the Plan "abused its discretion by relying on clearly erroneous findings of fact . . . and in relying on a medical report that failed to consider or address all the evidence;"  and the Plan violated his rights to a full and fair review when it performed a "bait and switch" by advising him it was relying on Dr. Kane's report to terminate his benefits, then relying on new evidence in denying his appeal.  Dkt No. 16, 1:7-13.  Alternatively, he asks the court to summarily adjudicate two "sub-issues:"  first, "[t]hough the Plan grants [the Pension Committee] full discretion to administer and interpret the Plan, the pension committee did not delegate discretionary authority to the Benefits Committee who actually terminated [his] benefits" (Dkt No. 16, 1:16-21); second, he seeks a determination of "the proper amount of past benefits" the Plan should have paid him because he "was granted total disability status by the Plan from December 2000 through April 2006 [but] was never paid any benefits due to a gross miscalculation of benefits to which [he] was entitled" (Dkt No. 16, 21:22-25).  DeLoach urges the Court to apply the *de novo* standard of review (Dkt No. 16, 22:7-23:8), but argues under either the abuse of discretion or the *de novo* standard, the only "reasonable conclusion" is that he is entitled to TDI benefits because the Plan "unreasonably

07CV1046

relied upon the report of Dr. Wieseltier in the face of overwhelming conflicting medical evidence to deny [his] appeal" and made a clearly erroneous factual finding based on that incomplete report lacking a complete analysis of all the evidence.  Dkt No. 23:11-17.

## II.    DISCUSSION

### A.    <u>ERISA</u>

In enacting ERISA, Congress intended to:

> "protect . . . participants in employee benefit plans and their beneficiaries, by requiring disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligations for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts."

<u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41, 44 (1987), *quoting* 29 U.S.C. § 1001(b).

"ERISA comprehensively regulates, among other things, employee welfare benefit plans that, 'through the purchase of insurance or otherwise,' provide medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability, or death." <u>Pilot Life</u>, 481 U.S. at 44, *citing* 29 U.S.C. § 1002(1) (deciding ERISA pre-empts state common law tort and contract actions asserting improper processing of a claim for benefits under an insured employee benefit plan).  Pension plan regulation is exclusively a federal concern.  <u>Pilot Life</u>, 481 U.S. at 45-46; *see* <u>Alessi v. Raybestos-Manhattan, Inc.</u>, 451 U.S. 504 (1981).

### D.    <u>Pertinent Plan Terms</u>

The Plan is provided as part of Exhibit A to the Green Declaration, pages A524 through A639, associated with the cross-motions.  Dkt No. 18.  In pertinent part, the Plan provides TDI benefits are available to employees who have attained the age of 35 and have completed 10 years of service with the company.  There is no dispute DeLoach meets those requirements.  There is also no dispute the amount of TDI benefits awardable to qualifying participants is equal to the greater of:

\ \

\ \

\ \

07CV1046

1          (a) The Participant's primary benefit under the Federal Social Security Act, -- or –

2

3          (b) Any Early Retirement Benefit payable under the Plan at the time Total Disability commences.

4   Exh. A-00574.

5      The Plan defines "Total Disability" as an injury or illness that:

6          1.9.1 Prevents [the Participant] from performing the duties assigned and required of him for the Employer's job classification

7          or job description as of the date of illness or injury [referred to by the parties as the "**Own Occupation**" period]; or

8

9          1.9.2 After 24 months of continuous disability, prevents him from engaging in any substantially gainful occupation for wages or profit for which he is reasonably qualified by education, training,

10         or experience [referred to by the parties as the **"Any Occupation**" period].

11

12  Ex. A-00536-537.

13     The amount of TDI benefits is to be calculated by comparison to other income:

14         5.5.3  The amount of monthly Total Disability income shall be equal to the greater of:

15

16         (a)  The Participant's primary benefit under the Federal Social Security Act, or

17         (b)  Any Early Retirement Benefits payable under the Plan at the time total Disability commences.

18

19         Such monthly Total Disability income shall be reduced by the amount of any other income from Employee sick leave, Worker's Compensation, occupational disease laws, or pursuant to the

20         disability income provisions of any state laws.

21  Ex. A, p. A574.

22     The Plan provides for the creation of a Pension Committee to administer the Plan,[1] and

23  confers on the Pension Committee the authority to appoint the Plan Administrator,[2] while

24

_____

25     [1]  "9.1.1 The Pension Committee ('Committee') shall be a 'Named Fiduciary' within the meaning of Section 402(a) of [ERISA] with respect to the control and management of the operation

26  and administration of the Plan."  Exh. A, pp. A594-595.

27     [2]  "9.1.2 The Committee shall appoint a Plan Administrator who may, but need not be, a member of the Pension Committee, who shall serve at the pleasure of the Pension Committee. The

28  Plan Administrator shall be the 'Plan Administrator' within the meaning of Section 3(16) of ERISA and Section 414(g) of the Internal Revenue Code of 1986, as amended.  The Plan Administrator shall

1   retaining for the Pension Committee full discretion to administer and interpret the Plan and

2   to determine eligibility for benefits under the Plan.[3]   The Committee's retained authority

3   includes the authority to delegate its responsibilities and powers, including its discretionary

4   authority, to other persons or organizations.[4]

5          Defendants represent, as supported by the Green Declaration exhibits, the Committee

6   delegated discretionary authority:

> At a May 1998 Board Meeting, the Directors of SDG&E voted to appoint the members of the Sempra Energy Pension and Benefits Committee to serve as the Pension Committee for the Plan.  During the same month, the Sempra Energy Board of Directors voted to establish the Sempra Pension and Benefits Committee.  The Board delegated to this Committee full discretionary authority over the Company's benefit plans, and further stated that the Pension and Benefits Committee would be deemed a "named fiduciary" under ERISA.  In November 1999, the Pension and Benefits Committee established a Benefits Subcommittee to handle benefit claims.  The Benefits Subcommittee was, accordingly, the entity which exercised the discretion granted to the Pension and Benefits Committee to make claims determinations [although the initial claims decision on benefits claims is made by Disability Management Services, which administers both the worker's compensation program and claims for TDI benefits under the Pension Plan].

16   Dkt No. 17, 4:11-24, n. 1 (citations to Exhibits omitted).

17   \ \

18   \ \

19   _____

20   have such powers and duties with respect to the control and administration of the Plan as may be delegated to it by the Committee."  Exh. A, p. A595.

22   [3]  "9.3 The Committee shall administer the Plan in accordance with its terms and applicable law and shall have all necessary and appropriate powers to carry out the provisions of the Plan.  The Committee shall have full discretion to administer and interpret the Plan and to determine eligibility for benefits under the Plan.  Any action or determination of that Committee involving the administration, application or interpretation of the Plan or eligibility for benefits under the Plan shall be final, conclusive and binding on all persons.  In particular, but not by way of limitation, the Committee shall have the following powers and duties: [¶] 9.3.1 To resolve all questions respecting administration, interpretation, and application of the Plan.  [¶] To resolve all questions respecting eligibility for participation, eligibility for receipt of benefits, and the amount of benefits."  Exh. A p. A597.

27   [4]  "The Committee from time to time may allocate to one or more of its members, and the Committee and the Plan Administrator and Investments Administrator may delegate to any other persons or organizations, any of their respective responsibilities and powers with respect to the operation and administration of the Plan."  Exh. A, p. A601.

**C.**   **Legal Standards**

**1.**   **Standards Of Review For ERISA Plan Benefits Determinations**

An ERISA-regulated plan must be administered "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]." Blau v. Del Monte Corp., 748 F.2d 1348, 1353 (9th Cir. 1984), *cert. denied*, 474 U.S. 865 (1985), *quoting* 29 U.S.C. § 1104(a)(1)(D). If the Plan gives the administrator or fiduciary the discretionary authority to determine a participant's eligibility for benefits and to construe the terms of the Plan, the courts review a denial of benefits for abuse of discretion. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989) (deciding issues arising under Section 1132(a)(1)(B) and interpretation of the term "participant" in Section 1002(7) for a class of laid off workers seeking termination pay they alleged was owed them under their ERISA plan). ERISA explicitly authorizes suits against fiduciaries and plan administrators to remedy statutory violations, including breaches of fiduciary duty and lack of compliance with plans. Id.,

In Firestone, the employer maintained for its employees three pension and welfare benefit plans governed in different ways by ERISA: a termination pay plan, a retirement plan, and a stock purchase plan. Firestone was itself the sole source of funding for those plans without establishing separate trust funds from which to pay benefits. That Court concluded *de novo* review was the appropriate standard to apply to Firestone's denial of benefits, framing the question presented to be a determination of "the appropriate standard of review in [29 U.S.C.] § 1132(a)(1)(B) actions challenging denials of benefits *based on plan interpretations*." Id. at 108 (emphasis added). "We express no view as to the appropriate standard of review for actions under other remedial provisions of ERISA." Id. The Firestone Court, in consideration of the observation "the validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue," held "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard **unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan**." Id. at 115.

1    DeLoach acknowledges there are "two scopes of review that apply to ERISA cases,"

2   contending the "default standard is a *de novo* review by the court" unless the Plan "grants

3   discretionary authority to the administrator," in which case "an *abuse of discretion* standard

4   will apply."  Pl. Mot. P&A 12:8-11, *citing* <u>Firestone</u>, 489 U.S. at 115.  To avoid application of

5   the abuse of discretion standard to his case, DeLoach argues:

6            The Plan grants the Pension Committee "full discretion to
         administer and interpret the Plan and to determine eligibility for
7        benefits under the Plan" (Ex. A-00597, ¶ 9.3).  DELOACH
         acknowledges this would grant the Pension Committee
8        discretionary authority that would trigger the abuse of discretion
         standard of review.  However, the Pension Committee did not
9        exercise its discretion in terminating DELOACH's benefits.  The
         Pension Committee delegated the function of determining
10       eligibility for benefits to the Benefits Committee created in
         November 1999.  It was the Benefits Committee that terminated
11       DELOACH's benefits by its letter dated April l6, 2006 and denied
         his appeal by letter dated March 8, 2007 (Ex. A-00640).

12

13   Pl. Mot. P&A 12:12-19.

14    While acknowledging the Plan grants the Pension Committee the authority to delegate

15   "any of their respective responsibilities and powers with respect to the operation and

16   administration of the Plan" (Ex. A-00601), DeLoach argues "the Pension Committee did not

17   delegate its discretionary powers to the Benefits Committee."  Pl. Mot. P&A 12:20-23.  For

18   purposes of selecting the proper standard of review, he argues: "The question that is at issue

19   is whether the Pension Committee properly delegated its discretionary authority to the Benefit

20   Committee."  Pl. Mot. P&A 12:24-25.  DeLoach relies on the November 16, 1999 minutes of

21   the Pension Committee creating the Benefits Committee to argue for *de novo* review on

22   grounds the new committee was only empowered to "handle benefits claims, [and] have

23   authority to make ministerial amendments to qualified plans."  Pl. Mot. P&A 13:1-4, *quoting*

24   Ex. 3-92.  He urges rejection of Defendants' broad reading of the delegation of authority to

25   the Benefits Committee to **"handle benefits claims**."  He argues: "There is no specific

26   delegation of the discretionary authority to determine eligibility for claims and more

27   importantly no authority whatsoever to interpret the terms of the Plan," with no other evidence

28   "presented by the Plan to support a finding that the Benefits Committee was granted full

discretionary authority to determine eligibility and to construe the terms of the Plan." Pl. Mot. P&A 13:4-8, *citing* Stennett Decl. ¶¶ 6-7.  He cites <u>Kearney  v. Standard Ins. Co.</u>, 175 F.3d 1084, 1089 (9th Cir. 1999) (*en banc*) for the proposition that unless ERISA plans grant power to construe or interpret the terms of the plan, they are insufficient to confer discretionary authority *on the administrator*, but merely identify the plan administrator's tasks, in which case *de novo* review applies.

The <u>Kearney</u> court reconciled disparate decisions on the standard of review district courts must apply in ERISA cases, "whether *de novo* or abuse of discretion, of a plan administrator's decision."  <u>Kearney</u>, 175 F.3d at 1086.  That court, applying <u>Firestone</u>, determined the *de novo* review standard applied to the ERISA plan and its administration at issue there because the conferral of discretion in the plan document was not unambiguous, but reinforced the distinction "a deferential standard of review for actions by trustees is 'appropriate when the trustee exercises discretionary powers.'" <u>Id.</u> at 1088, *quoting* <u>Firestone</u>, 489 U.S. at 111.  DeLoach also cites <u>Shane v. Albertson's, Inc.</u>, 504 F.3d 1166, 1170-71 (9th Cir. 2007) for the proposition *de novo* review is the proper standard of review after a court finds "the Plan trustees had failed to properly delegate their discretionary authority to the Plan's Review Committee who terminated the employee's disability benefits" without authorization. Pl. Mot. P&A 13:9-25.  DeLoach summarily argues: "The Pension Committee did not grant the Benefits Committee discretionary authority to determine eligibility for benefits or to construe the terms of the Plan," so "the *de novo* standard of review applies" to these cross-motions.  Pl. Mot. P&A 13:26-28.

Defendants observe DeLoach "concedes that where a benefit plan allocates discretionary authority to the plan administrator, the Court's review is limited to abuse of discretion on the administrative record," and argue  in this case, "there is proper allocation," leaving as the "only material issue . . . whether the administrator's decision was reasonable." Def. Opp. P&A 2:6-9, 3:6-11 ("because the Plan clearly and unambiguously confers discretion
\ \
\ \

1  upon the Sempra Pension and Benefits Committee[5], which decided Plaintiff's claim through

2  its Benefits Subcommittee," they "need not prove the existence of a triable issue of fact to

3  avoid summary judgment," but rather "need only demonstrate that the Benefits Committee

4  did not abuse its discretion in denying Plaintiff's claim for additional TDI benefits").

5        The court is persuaded by Defendants' demonstration the Plan language adequately

6  confers discretion on the then-Pension Committee as a named fiduciary with "full discretion

7  to administer and interpret the Plan and to determine eligibility for benefits under the Plan,"

8  and  to "delegate to any other person or organization its fiduciary responsibilities and powers

9  with respect to the operation and administration of the Plan," and that the Pension Committee

10  properly exercised its discretionary authority by delegating to the Pension and Benefits

11  Committee authority to "handle benefits claims," an assignment necessarily entailing the

12  exercise of discretion "to interpret plan terms and to make final benefits determinations."  Der.

13  Mot. P&A 10:17-27, *citing* Exh. A, A-597.  *See* Abatie v. Alta Health & Life Ins. Co., 458 F.3d

14  955, 963-64 (9th Cir. 2006) (there are no "magic words" necessary in order to confer

15  discretion, but the case law requires language granting the power to interpret plan terms and

16  to make final benefits determinations be "unambiguous").  The Plan language establishes the

17  Plan's authority to -- and undisputed facts substantiate it did -- delegate its discretionary

18  authority to the Pension and Benefits Committee to interpret Plan terms and to make final

19  Plan benefits determinations as essential components of claims handling.[6]  A grant of

20  discretion in the Plan document may extend to the fiduciary's employment of an agent to

21  perform actual claims processing.   Madden v. ITT Long Term Disability Plan, 914 F.2d 1279

22  (9th Cir. 1990).  The "arbitrary and capricious" standard of review applies to a claim decision

23  made by a claims review fiduciary exercising properly delegated authority.

---

24

25  [5]   Defendants explain the Pension Committee "became the Sempra Pension and Benefits Committee post-merger."  Def. Opp. P&A 11:16-17.

26  [6]   The Pension Committee (subsequently the Sempra Pension and Benefits Committee) is
27  a named fiduciary with "full discretion to administer and interpret the Plan and to determine eligibility for benefits under the Plan."  Green Decl. Exh. A, p. A597.  "[A]ny action of the Committee shall be
28  final and conclusive and binding on all persons,"and  the Committee "may delegate to any other persons or organizations its fiduciary responsibilities and powers with respect to the operation and administration of the Plan."  Id. p. A601.

1
2
3
4
5

> In accordance with the logic and reasoning of <u>Firestone</u>, we hold that where (1) the ERISA plan expressly gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan and (2) pursuant to ERISA . . . a named fiduciary properly designates another fiduciary, delegating its discretionary authority, the "arbitrary and capricious" standard of review for ERISA claims brought under § 1132(a)(1)(B) applies to the designated ERISA-fiduciary as well as to the named fiduciary.

6 <u>Maddon</u>, 914 F.2d at 1283-84.

7      As substantiated in the Plan document and other of the Green Declaration exhibits,

8 the Pension and Benefits Committee created a sub-committee (the Benefits Committee) for

9 the purpose of claims handling pursuant to "its discretionary authority, not only to make finial

10 claims decisions, but also to create its own mechanism for claims handling, including but not

11 limited to, creating the Benefits Sub-Committee for the purpose of exercising that authority."

12 Def. Mot. P&A 12:5-22. "Because the Pension and Benefit Committee created the Benefits

13 Sub-Committee, in accordance with the Plan provisions, the claims decisions are essentially

14 Pension and Benefit Committee decisions made pursuant to the power, and the discretion,

15 granted to the Pension and Benefits Committee under the terms of the Plan." Def. Mot. P&A

16 12:13-18, *citing* Exh. A, A-597, A-601. Accordingly, the court rejects DeLoach's contention

17 the proper standard of review of his benefits denial is *de novo.* Instead, the court finds the

18 proper standard to apply in reviewing the denial of his claimed TDI benefits is abuse of

19 discretion.[7] *See* <u>Firestone</u>, 489 U.S. at 111; <u>Abatie</u>, 458 F.3d at 963-64; <u>Taft v. Equitable Life</u>

20

---

21     [7] As noted by Defendants, the record raises no concern regarding any structural conflict or any conflicted fiduciaries because the entity making the initial benefits determination (DMS) is

22 different from the entity deciding appeals of those decisions (the Benefits Committee). *See* Dkt No. 17, p. 12 n. 5. DeLoach attempts to raise a conflict of interest issue in his Opposition to Defendants'

23 motion to "alter[] the court's level of review," in reliance on <u>Abatie</u>, 458 F.3d 955 (9th Cir. 2006), which overturned a line of cases placing the burden on the claimant to produce unrebutted evidence

24 of a "serious" conflict of interest. Pl. Opp. 3:12-24. While DeLoach is correct about the change in the law, he falls short of identifying *what* conflict the administrator purportedly had which purportedly

25 caused a failure of a full and fair review of his claims. No "structural" conflict like that in <u>Abatie</u> is demonstrated, where the insurer was also the claims administrator. "Rather, this case involves a

26 self-funded plan, where the initial determination is made by a completely disinterested entity (Disability Management Services) and an independent review on appeal is conducted by the Benefits

27 Committee. Because the Plan is fully funded, there is no evidence that the Benefits Committee has any financial incentive to deny claims or otherwise limit payment of TDI payments," so the court's

28 review of this case under the abuse of discretion standard is not impacted by any purported conflict of interest. Def. Reply 3:24-4:5.

07CV1046

1  Assurance Soc'y, 9 F.3d 1469, 1471 (9th Cir. 1993), *abrogation of premise a district court errs*

2  *in hearing additional evidence of disability not presented to Plan administrator recognized in*

3  Saffron v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863, 873 n.2 (9th Cir.

4  2008), *citing* Abatie, 458 F.3d at 973.

5       A reviewing court applying the abuse of discretion review standard must uphold the

6  Trustees' decision to deny benefits unless the decision is shown to have been without any

7  reasonable basis.  Bendixen v. Standard Ins. Co., 185 F.3d 939, 944 (9th Cir. 1999) (the

8  court need only determine whether the plan administrator construed plan provisions in a way

9  that conflicts with the plain language of the plan); *see* Snow v. Standard Ins. Co., 87 F.3d

10 327, 330 (9th Cir. 1996), *overruled on other grounds* Kearney, 175 F.3d 1084 ("the exercise

11 of that discretion is reviewed under the arbitrary or capricious standard, or for abuse of

12 discretion, which comes to the same thing"); *see also* Horan v. Kaiser Steel Ret. Plan, 947

13 F.2d 1412, 1417 (9th Cir. 1991) (a decision by an employee benefit plan's fiduciaries "is not

14 arbitrary unless it is 'not grounded on *any* reasonable basis'") (citation omitted); *see* Firestone,

15 489 U.S. at 115. The touchstone of "arbitrary and capricious" conduct is unreasonableness;

16 Eley v. Boeing Co., 945 F.2d 276, 279 (9th Cir. 1991) (ERISA plan administrators abuse their

17 discretion by rendering decisions without any explanation or by construing provisions in a way

18 that clearly conflicts with the plain language of the plan); *see also* Taft, 9 F.3d at 1473 ("an

19 administrator also abuses its discretion if it relies on clearly erroneous findings of fact in

20 making benefit determinations").

21            **2.    Summary Judgment**

22       Normally, summary judgment is appropriate if the evidence presented "show[s] that

23 there is no genuine issue as to any material fact and that the moving party is entitled to

24 judgment as a matter of law." Fed. R. Civ. P. ("Rule") 56(c); *see* Taylor v. List, 880 F.2d 1040,

25 1045 (9th Cir. 1989); *see also* Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919

26 (9th Cir. 2001).  However, in the Ninth Circuit, "[w]here the decision to grant or deny benefits

27 is reviewed for abuse of discretion, a motion for summary judgment is merely the conduit to

28 bring the legal question before the district court and the usual tests of summary judgment,

1  such as whether a genuine issue of material fact exists, do not apply." Bendixen, 185 F.3d

2  at 942.

3         The Abatie court articulated an approach to ERISA benefits denial cases it deemed

4  reflected the Supreme Court's instructions in Firestone:  "We read Firestone to require abuse

5  of discretion review *whenever* an ERISA plan grants discretion to the plan administrator, but

6  a review informed by the nature, extent, and effect on the decision-making process of any

7  [kind of] conflict of interest that may appear in the record." [8]   Abatie, 458 F.3d at 967-68

8  (emphasis added).  Nevertheless,  the *de novo* standard of review will apply if the benefits

9  decision was arrived at through an unauthorized delegation procedure not contemplated in

10  the plan.  *See, e.g.*, Shane, 504 F.3d at 1170-71 (although an ERISA self-funded LTD plan

11  granted its trustees discretionary authority over benefits decisions, the *de novo* standard of

12  review, rather than the abuse of discretion review standard, applied to a termination of

13  benefits challenge where the employer's medical review committee ("MRC"), acting as an

14  appropriate trustee delegate as permitted under the plan, made the ultimate termination

15  determination, but not before the trustee had first transferred discretionary authority to a

16  company executive, who in turn purported to transfer such authority to the MRC; that

17  procedure was not contemplated in the plan, so the body that terminated the claimants LTD

18  benefits (although falling within the scope of persons or bodies *eligible to receive* the

19  Trustee's discretionary authority) was not properly vested with the requisite discretionary

20  authority to review the claim);[9] *see also* Jebian v. Hewlett-Packard Co. Employee Benefits

21  Organization Income Protection, 349 F.3d 1098, 1105 (9th Cir. 2003) ("When an

---

23  [8]   Defendants contend a court deciding a motion for summary judgment under Plan provisions conferring on ERISA Plan administrators discretionary authority over benefits decisions will overturn a benefits decision, applying the abuse of discretion standard, only when presented with evidence of a serious misconstruction of the Plan documents or an absence of reasoning in the benefit denial, citing Atwood v. Newmont Gold Co., Inc., 45 F.3d 1317, 1323-24 (9th Cir. 1995) (articulating a test placing the burden on ERISA plaintiffs to consider the influence of conflicts of interest only if the plaintiff brought forth evidence of a "serious conflict of interest," in which case *de novo* review would supplant abuse of discretion review).  However the Atwood test was overruled by Abatie, 458 F.3d 955, 966-67 "in its entirety" based on three articulated errors, not on "other grounds" as Defendants represent.

28  [9]   A thoughtful dissent in Shane explains why it may be persuasively argued the abuse of discretion standard ought to have been applied in the circumstances of that case.

07CV1046

1   unauthorized body that does not have fiduciary discretion to determine benefits eligibility

2   renders such a decision . . . deferential review is not warranted") (citation omitted); Abatie,

3   458 F.3d 955, 964-65 (9th Cir. 2006) (de novo review is appropriate when administrator acts

4   in "flagrant disregard of procedural requirements of ERISA," whereas other procedural

5   irregularities are a matter to be weighed in deciding whether an administrator's decision was

6   an abuse of discretion, including even administrator conflict of interest allegations).

7        Reviewing courts must defer to the administrative decision, rather than reviewing

8   benefits denials de novo, if the grant of discretionary authority in the Plan terms is

9   "unambiguous[]." Kearney, 175 F.3d at 1090; see Abatie, 458 F.3d at 964-65 (ERISA plan

10  that gives administrator full and final authority to interpret the terms of the plan and to

11  determine benefits eligibility, vesting that authority exclusively in the administrator, is subject

12  to abuse of discretion review).

13       **E.**   **Evidentiary Record**

14            **1.**   **Defendants' Evidentiary Objections**

15       Defendants object to portions of the DeLoach Declaration (Dkt No. 22) and the

16  Stennett Declaration  (Dkt No. 23) provided in support of his Cross-Motion.  The DeLoach

17  Declaration reviews the payments he received as Social Security disability benefits for the

18  period December 2002 to November 2008.  He also traces his experience in computer repair

19  training, his exhaustion in June 2006 of Workers' Compensation permanent disability

20  benefits, his decisions about medical payments and surgery, his experience in December

21  2006 when he saw Dr. Wieseltier, and his correspondence after the Plan notified him in

22  March 2007 his appeal for TDI benefits was denied, and his attempt to have Workers'

23  Compensation counsel instruct Dr. Wieseltier to review the FCE he had declined to review

24  before as beyond the scope of what he was asked to do.  Defendants object on grounds the

25  entire DeLoach Declaration is irrelevant and not probative of any issue before the Court

26  reviewing administrative fact finding for abuse of discretion.   They further object his

27  Declaration contains hearsay, is objectionable based on the best Evidence Rule, lacks

28  foundation for certain representations, and its probative value is outweighed by prejudicial

1  impact and confusion of issues.  The Court need not rule on the specific objections because

2  the administrative record and Defendants' undisputed course of conduct provide the

3  appropriate foundation for a ruling on the cross-motions.  Defendants also object to the

4  Sennett Declaration in its entirety on relevancy, lack of probative value, and misstatement of

5  the record grounds, among other things.  Again, the Court does not rely on its contents in

6  ruling on these cross-motions.

7                    **2.    Administrative Record**

8         The Abatie court reviewed the variation of approach among the circuits on the question

9  of the evidence a court may consider when a participant sues a plan administrator to

10  challenge its decision to deny benefits.  Abatie, 458 F.3d at 969-70.  Citing cases from the

11  2nd, 4th, 5th, 7th, 10th, and 11th Circuits, Abatie observes: "Many circuits limit a district court

12  to the administrative record when the court is reviewing a case on the merits for an abuse of

13  discretion; consideration of new evidence is permitted only in conjunction with de novo review

14  of a denial of benefits."  Id.   The Ninth Circuit has "adhered to a similar rule."  Abatie, 458

15  F.3d at 970, *citing* Jebian, 349 F.3d at 1110), Kearney, 1757 F.3d at 190-91, Mongeluzo v.

16  Baxter Travenol Long Term Disability Benefit Plan, 46 F.3d 938, 944 (9th Cir. 1995).  In

17  observing "a subtler question arises when a court must decide how much weight to give a

18  conflict of interest under the abuse of discretion standard," the Abatie court found the court

19  may consider evidence outside the record in making that determination.  Id. at 970.  That

20  court nevertheless reiterated the general rule:  "we continue to recognize that, ***in general, a***

21  ***district court may review only the administrative record when considering whether the***

22  ***plan administrator abused its discretion***, but may admit additional evidence on de novo

23  review."  Id. at 970 (emphasis added).  District courts may take additional evidence whenever

24  "[procedural] irregularities have prevented a full development of the administrative record."

25  Abatie, 458 F.3d at 973.  However, no *procedural* irregularity was responsible for the absence

26  of particular evidence DeLoach now  argues the reviewing entity ought to have considered

27  \ \

28  \ \

- 17 -

1  to "complete" the medical record.[10]  He articulates no conflict of interest.  This Court will apply

2  the abuse of discretion standard of review rather than the *de novo* standard.

3        The Administrative Record includes documents from the Workers' Compensation file

4  created by Disability Management Services ("DMS"), "the SDG&E entity that performed the

5  first level of claims review [as well as] DeLoach's claim for worker's compensation benefits."

6  Green Decl. ¶ 6.  Exhibits attached to the Green Declaration include a "list of the Temporary

7  Disability,  Temporary  Total  Disability,  Permanent  Partial  Disability,  and  Vocational

8  Rehabilitation payments that SDG&E and Sempra made to Deloach."  Green Decl. 3:16-18,

9  Exh. E pp. E657-663.  That record reflects DeLoach's Temporary Total Disability payments

10 ended in March 2004, his Temporary Total Disability payments ended the same month, and

11 his Permanent Disability payments re-commenced at the rate of $680 per month.  Id. 3:18-20,

12 Exh. E p. E664.  The record also notes Hartford, the insurance company for SDG&E's LTD

13 plan, determined DeLoach did not qualify for benefits under the LTD plan after June 2002.

14 Id. 3:20-23, Exh. E p. E665.  The record also included evidence SDG&E paid for DeLoach

15 to be retrained to work as a computer repair technician as he could not return to heavy

16 equipment operation.  The Benefits Committee also considered evidence DeLoach provided,

17 including an FCE report generated in association with his Social Security proceedings through

18 which he was awarded disability benefits.

19       The reasons for the denial of Plan benefits are material to the analysis and affect the

20 degree of deference appropriate to the denial decision, as is the course of dealing between

21 the claimant and the Plan.  Saffron.  522 F.3d at 873 n. 2.  Similarly, the cause of any alleged

22 failure to develop the administrative record and the new evidence itself may be considered.

23 Id.  The record here does not permit the construction that the administrative proceedings

24 _____

25       [10]    The Court notes two cases Defendants rely on to support their proposition that "only
   evidence that was presented to the plan trustee or administrator" may be reviewed by a court
26 conducting a review of an administrator's factual findings for an abuse of discretion (Taft, 9 F.3d1469
   (9th Cir. 1993) and McKenzie v. General Tel. Co. of California, 41 F.3d 1310 (9th Cir. 1994)) were
27 abrogated by Saffon v. Wells Fargo &  Co. Long Term Disability Plan, 522 F.3d 863, 865 (9th  Cir.
   2008) on that point (deciding the question whether an ERISA plan administrator properly terminated
28 benefits because of its beneficiary's failure to produce evidence of her disability) in consideration of
   the Abatie holding the district court may hear additional evidence when "procedural irregularities have
   prevented full development of the record."  Id., *citing* Abatie, 458 F.3d at 973.

1  failed to have "a meaningful dialogue" with the claimant in the course of obtaining a complete

2  medical record or otherwise to develop the administrative record.  *Cf.* <u>Saffron</u>, 522 F. 3d at

3  873 n. 2.

4         DeLoach's appeal asserted the Plan had "mis-read Dr. Kane's report by omitting his

5  requirement that DELOACH be weaned off his medications before returning to the job

6  market," and he provided "additional medical records from Dr. Yoon, Dr. Thigpen and Dr.

7  Harris substantiating his disability and necessity of pain medications." Pl. Mot. P&A 10:21-24.

8  He also "pointed out the differences of the physical capacity evaluations of Dr. Kane and Dr.

9  Harris and provided objective verification of his physical limitations." Pl. Mot. P&A 10:25-27.

10 The Committee drew its own conclusions from its "careful review" of the record which

11 included a body of evidence dating back to 1998, with stated reasons for its determination the

12 evidentiary record as a whole supported a finding DeLoach would be able to work in the new

13 occupation as a computer hardware technician for which he was trained in his vocational

14 rehabilitation.  *See* Green Decl. Exh. A, p. A348 (Dr. Kane's February 14, 2006 Report was

15 based on a complete history of DeLoach's injuries, not merely the left knee injury, and a

16 thorough physical examination); *see also* <u>Id.</u> at p. A336 (DeLoach's treating physician, Dr.

17 Harris, stated in a notation on April 6, 2006, after his review of Dr. Kane's February report:

18 "It is my opinion that the patient should be able to perform the job he was trained for under

19 these medications").  Moreover, DeLoach's objections to Dr. Wieseltier's report on grounds

20 his examination was "limited" because he did not review certain Kaiser records or the FCE

21 are blunted by the Committee itself having considered those documents.  Green Exh. A, pp.

22 A640-642.  In addition, the  FCE is not a medical record, was not prepared by a health care

23 professional, and by its own terms "should not be construed to establish any specific level of

24 permanent disability."  <u>Id.</u>, p. A262.

25        DeLoach substantiates the Benefits Committee advised him by letter dated

26 December 26, 2006 that it was tabling his appeal until it received a report from Dr. Wieseltier

27 who saw him in December 2006 under the Workers' Compensation system.  Ex. A-00121.

28 DeLoach represents he brought with him to Dr. Wieseltier's office at the time of that

1  examination the FCE report, but Dr. Wieselier refused to review it because it was not part

2  of the records SDG&E had requested he review. Pl. Mot. P&A 11:4-9. In early February

3  2007, DeLoach's counsel asked the Benefits Committee to make a decision on his appeal.

4  While acknowledging the Committee advised DeLoach it was awaiting Dr. Wieseltier's report,

5  he represents "Dr. Wieseltier's evaluation was limited to the issue of whether the Workers'

6  Compensation should continue to pay for ongoing chiropractic care." Pl. Mot. 11:11-14, *citing*

7  Ex. A-00072-73. By letter dated March 8, 2007, the Benefits Committee advised him it was

8  denying his appeal based on the December 2006 report of Dr. Wieseltier, which restated the

9  disability rating he had given DeLoach in 2004. Exh. A-00640, Exh. A-00518.

10      By letter dated April 10, 2007, DeLoach requested the Benefits Committee reassess

11  its position in light of the limited scope of Dr. Wieseltier's review, contending his

12  December 2006 report "was not based on a current view of all the medical records,

13  (specifically the Functional Capacity Evaluation) and was limited to merely those injuries that

14  were related to his Workers' Compensation claim (excluding the hip lesion, neck, and

15  cognitive issues)" forming part of his then-current medical condition. Pl. Mot. P&A 11:20-24.

16  DeLoach pointed out his counsel had contacted Dr. Wieseltier's office to request he perform

17  a full evaluation in consideration of all injuries and all the medical evidence, but Dr. Wieseltier

18  had refused, "indicating that he limits his practice to performing agreed medical evaluations

19  under the Workers' Compensation field and will not review any documentation or issues

20  unless presented by the Workers' Compensation attorney." Pl. Mot. P&A 11:24-12:1.

21  DeLoach told the committee SDG&E's Workers' Compensation attorney, Jeffrey Jones,

22  refused to ask Dr. Wieseltier to expand his review of DeLoach's condition. Pl. Mot P&A

23  12:1-4, citing Exh. A-00051. Deloach represents the Plan did not respond to his request the

24  review be more comprehensive.

25      **F.    Cross-Motions Merits**

26      The cross-motions call upon the Court to consider whether the Benefits Committee

27  abused its discretion when it denied DeLoach's appeal of the DMS determination he was not

28  entitled to TDI benefits because of its findings he was not precluded from "any occupation" --

1  in particular, repairing computers, an occupation SDG&E paid to train him to perform after his

2  work injuries precluded him from returning to his prior occupation -- and all Plan benefits

3  accordingly ceased at the conclusion of the two-year period during which he received LTD

4  benefits, despite the Plan's earlier TDI finding and despite a subsequent Social Security

5  Administration disability award.  That award was predicated on a non-physician's opinion

6  DeLoach's residual functional capacity limitations would not permit him to perform even the

7  tasks required of a computer repair person.

8     DeLoach challenges the manner in which the Plan interpreted the record rather than

9  any ambiguity in a Plan provision affecting entitlement to TDI benefits.  He argues for

10  summary judgment on grounds: the Plan improperly calculated his benefits; the Plan abused

11  its discretion in denying him the right to on-going disability benefits (in particular by

12  terminating his TDI benefits, by denying the administrative appeal in unreasonable reliance

13  on a medical opinion purportedly based on an incomplete analysis of all the record, and by

14  failing to provide him a full and fair review); and he is entitled to benefits under a *de novo*

15  standard of review.  The Court rejected the latter argument for the reasons recited above.

16     Defendants argue for summary judgment in their favor on grounds:  the Benefits

17  Committee's decision should be reviewed for abuse of discretion, with the scope of the court's

18  review limited to the administrative record; and the Plan Administrator did not abuse its

19  discretion because it reasonably concluded,  based on the administrative record, DeLoach

20  was not disabled from "any occupation."

> SDG&E paid for Plaintiff to be re-trained to work as a computer repair technician. Two Board certified physicians concluded that Plaintiff had the ability to perform that occupation on a full time basis. The Benefits Committee considered all of the evidence that Plaintiff submitted (including the FCE report), and found the opinions of Dr[s]. Kane and Wieseltier (an agreed upon medical examiner who evaluated Plaintiff repeatedly over a period of several years) more persuasive than the FCE report and the Social Security award.  Several opinions in this Circuit, published and unpublished, hold that even where a decision is solely based on the opinion of an independent medical expert there is not abuse of discretion. [Citations omitted]. . . . **Simply put, the Plan administrator's decision is more than adequately supported by the independent medical evaluations, and therefore Plaintiff cannot sustain his burden of demonstrating entitlement to TDI benefits under the Plan**.

1  Def. Mot. P&A 15:1-17 (emphasis added).

2      Defendants argue "the question before the Court is **not** which side's interpretation is

3  more persuasive, but rather, whether the Plan's determination is 'reasonable,' *i.e.*, not based

4  on clearly erroneous findings of fact or a construction that conflicts with the plain language

5  of the Plan." Def. Mot. P&A 15:22-25, *citing* McDaniel v. Chevron Corp., 203 F.3d 1099, 1113

6  (9th Cir. 2000), *citing* Canseco v. Construction Laborer's Pension Trust, 93 F.3d 600, 606 (9th

7  Cir. 1996).

> An ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact. . . . [¶] "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California, 508 U.S. 602, 622 . . . (1993) [citation omitted]. We will uphold the decision of an ERISA plan administrator "if it is based upon a reasonable interpretation of the plan's terms and was made in good faith." Estate of Shockley v. Alyeska Pipeline Serv. Co., 130 F.3d 403, 405 (9th Cir. 1997).

16  Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan, 410 F.3d 1173, 1178 (2005).

17      DeLoach opposes Defendants' motion on grounds the Benefits Committee purportedly

18  was never granted discretionary authority by the Pension Committee. Pl. Opp. 1:1-2. He

19  suggests a procedural deficiency in reliance on Plan paragraph 9.7. That paragraph

20  addresses "Allocation and Delegation of Fiduciary Responsibilities" and imposes an obligation

21  to "review[] periodically" the delegated powers and duties. DeLoach argues unpersuasively

22  that review obligation is a condition of an effective delegation. Absent proof of periodic

23  review, he unpersuasively contends an otherwise proper delegation of fiduciary responsibility

24  can be negated as a purported failure to comply with Plan procedures.[11] The Court found

25  above the delegation was proper, and finds here "periodic review" of the expressly delegated

26  \ \

27  _____

28      [11]  "Defendants have made no showing that there has been any review of the powers and duties delegated to the Benefit Committee in conformance with the terms of the Plan since the Benefit Committee was formed in 1999." Pl. Opp. 3:2-4.

1  powers and duties is immaterial to whether the powers and duties were properly delegated
2  in the first instance.

3       In reaching its decision to deny DeLoach TDI benefits, the Benefits Committee found
4  the independent medical examiners' opinions of *both* Dr. Kane and Dr. Wieseltier (an agreed
5  medical examiner who had examined DeLoach repeatedly over a period of several years
6  beginning in 1999) to be more persuasive on the "any occupation" issue than the Social
7  Security proceeding's FCE evaluation,  although they expressly considered the entire record.
8  The February 23, 2007 Benefits Committee meeting minutes reflect the considerations and
9  evidence relied on to deny DeLoach's appeal, after continuances for the purpose of full
10  development of the record as is also substantiated in the administrative record beginning with
11  a Benefits Committee meeting on June 28,2006.  See Green Decl. Exh. A, A1-A12.

12       The February 23,2007 minutes recite the procedural history of DeLoach's appeal to
13  the Committee from December 18, 2006, at which time:  "the Committee had significant
14  discussions, consulted with Norma Tsutsui of [DMS], reviewed the opinion of Norman Kane
15  dated February 7, 2006 which indicated that Mr. DeLoach was not totally disabled, . . .
16  reviewed the Social Security Disability Insurance Award, as well as, medical opinions and
17  other material provided by Mr. DeLoach's attorney."  Green Exh. A, p. A10.  By that time, the
18  DMS representative informed the Committee DeLoach had seen the Agreed Medical
19  Examiner, Dr. Wieseltier.  "Given the potential value of a report by a neutral physician agreed
20  to by the parties through the workers' compensation process, and further, who had previously
21  examined Mr. DeLoach and reported on his condition, the matter was tabled pending receipt
22  of the Agreed Medical Examiner report."  Id.

23       Despite DeLoach's attorney's opinion regarding the relevance of the Agreed Medical
24  Examiner's report based on its purported narrow scope, the Committee resumed the appeal
25  proceedings on February 23, 2007 and considered that and other augmentations to the
26  evidentiary record:

27            However, the Agreed Medical Examiner report analyzed
          and re-evaluated Mr. DeLoach's condition.  In addition to
28        reviewing the AME report, the Committee reviewed all additional
          materials provided by Mr. DeLoach's counsel.  This included

1   reports by Thomas W. Harris, his treating physician at Pain Care,
2   as well as the Functional Capacity Evaluation Report prepared by
    Barbara Tourtellott at Fit to Work, Inc. at the request of Mr.
3   DeLoach's attorney. Ms. Tourtellott is a registered Occupational
    Therapist, Licensed Occupational Therapist and Certified
4   Evaluation Specialist. She concluded that Mr. DeLoach does not
    currently demonstrate the ability to perform work at a level
5   required in the competitive labor market on either a full or part-
    time basis. She specifically indicates that he is unable to perform
6   the Certified Computer Support Technician position for which he
    has received vocational training paid for by the San Diego Gas
7   & Electric Company. . . through the worker's compensation
    process.

8          Dr. Wieseltier, the Agreed Medical Examiner, reiterated
9   and confirmed his prior opinion that Mr. DeLoach would be able
    to perform the physical demands of the job of Certified Computer
    Support Technician.
10

11         The Committee further notes that there is no indication
    provided by Mr. DeLoach or his counsel that his disability rating
12  under workers' compensation has been modified in light of any
    medical reports developed by Mr. DeLoach's counsel.

13         Ms. Tsutsui also informed the Committee that Mr.
14  DeLoach was continuing to take computer courses relating to the
    Computer Support Technician position. The Committee engaged
15  in lengthy discussion. Because of the high standards imposed,
    the Committee carefully considers an award of Social Security
16  Disability Insurance Benefits in evaluating entitlement in making
    its determination. However, after careful consideration **the**
17  **Committee determined that even higher priority should be**
    **given to a neutral physician agreed to by the parties in the**
18  **course of an adversarial (workers' compensation)**
    **proceeding**.

19  Green Decl. Exh. A, pp.; A10-A11 (emphasis added).

20         The February 23, 2007 Minutes conclude with the unanimous determination to deny

21  DeLoach's appeal. Green Decl. Exh. A, p. A11. The March 8. 2007 letter informing him of

22  that result described in considerably greater detail the medical records and opinions the

23  Committee relied on, including but not limited to quoted passages from medical records, in

24  particular orthopedic surgeon Dr. Kane's February 7, 2007 report, and orthopedic surgeon

25  Dr. Wieseltier's December 11, 2006 report regarding DeLoach's limitations, confirming his

26  May 24, 2004 results of DeLoach's physical capabilities. Green Decl. Exh. A, pp. A640-641.

27         Applying the significantly deferential standard of review to the Plan's exercise of its

28  discretionary authority to approve or deny TDI disability benefits under the express provisions

in the controlling Plan, the Court finds no abuse of discretion.  The administrative record reveals the Committee carefully considered the material medical and vocational evaluations, then reasonably exercised its discretion, with express justifications for the weight and significance it attributed to the various records, in reaching its decision.  In particular, as DeLoach argues the Committee unduly considered Dr. Wieseltier's most recent report without further input from DeLoach, the Court finds eminently reasonable the persuasive weight the Committee assigned to that physician's opinions predicated on his long-term familiarity with DeLoach's condition.  The Committee similarly had and found persuasive Dr. Kane's February 7, 2006 opinion indicating DeLoach was not totally disabled, despite the considerable weight it also states it gave to the Social Security Administration's determination DeLoach was entitled to disability insurance benefits.[12]

With respect to DeLoach's additional contention he is entitled to corrected and additional "back pay" benefits, in reliance on the May 2005 Social Security Administration's determination he was totally disabled from any employment, the evidence he was receiving over $1,500.00 per month was before the Committee.  Leaving aside the amount "offset" challenges, the Plan approved disability payments to DeLoach under the "own occupation" definition of disability for two years based on his October 2000 claim.  Undisputed Fact Nos. 10, 11.  Any benefits payment after December 2002 would only be appropriate under the "any occupation" definition, as the Plan defines "total disability" as a circumstance which expressly does not arise until after 24 months of continuous disability passes, with the claimant at that point required, for benefits eligibility, to be unable to engage in "any substantially gainful

---

[12]   Defendants' summary of certain highly material  and undisputed evidence in the administrative record compel a finding the Committee did not abuse its discretion: "• Plaintiff alleged that he was totally disabled from any occupation due to his orthopedic injuries (and, on appeal, due to his pain medication).  • Two different orthopedic surgeons, including an agreed upon medical evaluator, concluded that Plaintiff was able to perform an occupation for which he was qualified.  • No orthopedist (including Plaintiff's own treating physician, Dr. Harris) has ever opined that Plaintiff is totally disabled from any occupation.  • Plaintiff's current pain management physician has not reported any symptoms from Plaintiff's pain medication that would prevent him from working, and at least two physicians (Dr. Kane and Dr. Harris) have stated the contrary."  Def. Reply 7:7-16.  From that summary, Defendants argue:  "the decision that DeLoach is not entitled to additional TDI benefits was not unreasonable and does not constitute an abuse of the discretion conferred to the Committee under the terms of the Plan," citing, inter alia, Jordan v. Northrup Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 879 (9th Cir. 2004), McDaniel, 203 F.3d at 1113.  Def. Reply 7:17-23.

1  occupation for wages or profit for which he is reasonably qualified by education, training, or

2  experience."  Undisputed Fact No. 6.  Defendants trace, with citations to the record,

3  DeLoach's failure to cooperate in DMS's attempts to augment the record as the 24-months

4  of disability payments deadline approached.  Without proof of total disability from any

5  occupation, he could not continue under the Plan terms to receive any more disability

6  benefits, as set out in both the Plan document and the summary plan description. Undisputed

7  Fact No. 6.  In November 2002, he did not keep a medical evaluation appointment DMS

8  scheduled for him.  In 2005, he notified DMS he had received the social security award

9  retroactive to 2003, with an offset for his workers' compensation benefits.  DMS notified

10  DeLoach at that time it needed to investigate further, including with a medical evaluation,

11  whether he met the Plan's "any occupation" definition. Def. Reply 8:2-23. DMS stated at that

12  time his eligibility for TDI Plan benefits had not been determined, and could not be

13  determined without the medical examination. All those communications occurred concurrently

14  with DeLoach's ongoing workers' compensation claim, and included repeated references in

15  the record to "2 yr TDI eval" alerting him to the approaching expiration of the approved

16  benefits period unless he submitted to the  additional medical evaluation pertinent to the "any

17  occupation" determination, undermining his suggestion he did not know about the additional

18  requirements for continued benefits beyond two years.  The record thus reflects "meaningful

19  dialogue" and communications occurred during the period 1998 through 2007, including

20  submission and exchange of medical and benefits information, vocational rehabilitation which

21  Dr. Harris approved in 1999,  and Dr. Wieseltier's reports in 2004 and 2006 opining DeLoach

22  was able to perform gainful work.  Def. Reply 9:1-17.

23       All DeLoach's arguments directed to calculation errors associated with the amount of

24  TDI benefits he seeks are mooted by the finding the Plan reasonably found he failed to show

25  he is totally disabled from "any occupation." The Court is unable to find the Benefits

26  Committee's decision constituted an abuse of discretion, as it was not unreasonable nor

27  clearly erroneous  nor in  conflict with Plan language.  The administrative  record  contains

28  \ \

07CV1046

1    ample support for the Benefit Committee's finding DeLoach was ineligible for Plan benefits

2    beyond the two year "own occupation" period.

3          **C.**     **Proper Parties**

4          Defendants argue Sempra and SDG&E are not proper parties to this action. The court

5    finds it need not decide the issue, in consideration of its conclusion Defendants are entitled

6    to summary judgment on the Plan benefits claim, disposing of this action in its entirety.

7    **III.**     **CONCLUSION AND ORDER**

8          For all the foregoing reasons, **IT IS HEREBY ORDERED** Plaintiff's Cross-Motion For

9    Summary Judgment is **<u>DENIED</u>**, and Defendants' Motion For Summary Judgment is

10   **<u>GRANTED</u>**, disposing of all claims and all parties and terminating the case.

11         **IT IS SO ORDERED**.

12   DATED:  September 24, 2008

13

14   **HONORABLE LARRY ALAN BURNS**
     United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07CV1046